O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
phone: (212) 326-2000
fax: (212) 326-2061
Robert A. Siegel
Jeffrey I. Kohn
Anh T. LyJordan



Attorneys for Plaintiff
Atlas Air Worldwide Holdings, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



POLAR AIR CARGO WORLDWIDE, INC.,
                    *Plaintiff,*

v.

AIR LINE PILOTS ASSOCIATION
INTERNATIONAL and POLAR AIR CARGO, INC.
MASTER EXECUTIVE COUNCIL,
                    *Defendants.*

No. 07 CV _____ ( ___ )



## COMPLAINT TO COMPEL ARBITRATION UNDER THE RAILWAY LABOR ACT

Plaintiff Polar Air Cargo Worldwide, Inc. ("Polar" or "Plaintiff") hereby alleges for its

Complaint as follows:

### SUMMARY OF ACTION

1.      In this action, Plaintiff seeks an order under the Railway Labor Act, 45 U.S.C.

§§ 151 *et seq.*, to compel the Airline Pilots Association International ("ALPA"), the labor

organization certified to act as collective bargaining representative of all flight deck

crewmembers (*i.e.*, pilots and flight engineers) flying for Polar, and the ALPA Master Executive

Council for Polar (the "Polar MEC") (collectively referred to herein as "Defendants"), the local

collective bargaining representative of Polar's crewmembers, to participate in an arbitration to

resolve a Railway Labor Act "minor dispute" regarding the interpretation and application of certain provisions in the collective bargaining agreement between Polar and Defendants and certain side letter agreements to that agreement. Plaintiff seeks this relief because, among other things, Defendants have refused to participate in the arbitration procedures established by the collective bargaining agreement and relevant side letter agreements, in violation of the statutory procedure mandated by the Railway Labor Act.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over the present action pursuant to 28 U.S.C. §§ 1331 and 1337 because this case arises under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, a federal statute regulating interstate commerce.

3.      Venue is proper within the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because jurisdiction is not founded on diversity jurisdiction and it is a district where a substantial part of the events or omissions giving rise to the claim occurred, is a district where any Defendant to this action may be found, and/or is a district wherein Defendants are unincorporated labor associations and do business.

### THE PARTIES

4.      Polar is a commercial air carrier with national and international operations, and is among the world's leading providers of airport-to-airport freight carriage. Polar is headquartered in Purchase, New York. Polar is a "common carrier by air" under which it operates an airline system for the carriage by air of freight in domestic, overseas and foreign commerce. As such, Polar is a "carrier" as defined by Section 201 of the Railway Labor Act, 45 U.S.C. § 181.

5.      Defendant ALPA is an unincorporated labor organization, with its principal offices in Washington, D.C. Defendant Polar MEC is an unincorporated labor organization, with its principal offices in Sunny Isles Beach, Florida. ALPA is the certified collective bargaining representative of the Polar crewmembers under the Railway Labor Act. The Polar MEC is the local bargaining representative for the Polar crewmembers.

6.     Polar and Defendants are parties to a collective bargaining agreement governing the rates of pay, rules, and working conditions of Polar's crewmembers (the "Polar Agreement"). Polar and Defendants are also parties to various side letter agreements to the Polar Agreement, including a side letter agreement titled "Return to Work Agreement" and a side letter agreement titled "System Board of Adjustment."

## FACTUAL BACKGROUND

### The Obligation To Arbitrate Disputes Under The Railway Labor Act

7.     The Railway Labor Act provides that air carriers and their employees are obligated "to exert every reasonable effort to make and maintain agreements . . . and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." 45 U.S.C. § 152, First.

8.     Section 204 of the Railway Labor Act, 45 U.S.C. § 184, further obligates air carriers and their employees to create arbitration tribunals, known as boards of adjustment, to resolve disputes over the application and interpretation of the parties' collective bargaining agreements. Specifically, Section 204 provides that "disputes growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions," which have not been resolved by the grievance procedures antecedent to arbitration, "may be referred by petition of the parties or by either party to an appropriate adjustment board." 45 U.S.C. § 184. Section 204 also mandates that: "It shall be the duty of every carrier and of its employees, acting through their representatives . . . to establish a board of adjustment," and the parties are required to submit these contract interpretation disputes to the appropriate board of adjustment for final and binding arbitration. 45 U.S.C. § 153.

9.     Consistent with the mandates of the Railway Labor Act, Polar and the Defendants have established an arbitration tribunal, called the Polar Air Cargo Crewmembers' System Board of Adjustment (the "System Board"), pursuant to Section 21 of the Polar Agreement. Section 21 of the Polar Agreement provides that the System Board "shall have jurisdiction over disputes

3

between a Crewmember covered by this Agreement and the Company, or between the Company and the Association, growing out of the interpretation or application of any of the terms of this Agreement or amendments thereto."  (A copy of Section 21 of the Polar Agreement is attached hereto as Exhibit A.)

10.    On December 15, 2004, Polar and Defendants entered into a side letter agreement to the Polar Agreement which established a panel of neutral arbitrators to preside over System Board matters and also established a protocol for assigning arbitrators to grievances (the "System Board Protocol").  (A copy of the System Board Protocol is attached hereto as Exhibit B.) Section 21.C.3 of the Polar Agreement, as amended by the System Board Protocol, states that "[t]here will be a standing panel of ten (10) arbitrators for the term of this Agreement from which the parties will select the neutral arbitrator to sit as chairperson of the System Board." Section 21.C.3.e. sets forth the general procedures for the parties to follow in the selection of the arbitrator to act as chairperson of the System Board, and provides, in relevant part, that unless the parties agree otherwise:  "[G]rievances to be scheduled shall be assigned to arbitrators in the order in which their names appear on the standing panel.  Either party may initiate the scheduling of a grievance for arbitration by notifying the arbitrator to be assigned the grievance in writing of [certain specified] information."  The current list of arbitrators appointed to the standing panel was adopted by the parties on May 24, 2006. (The May 24, 2006 addendum to the System Board Protocol specifying the names of the ten arbitrators appointed to the standing panel is attached hereto as Exhibit C.)  Notably, there are no provisions in the Polar Agreement or any side letter agreement to the Polar Agreement dictating the order of grievances to be heard by the System Board, and more specifically there are no provisions in the Polar Agreement or any side letter agreements to the Polar Agreement restricting Polar's right to assign a company grievance to an arbitrator for immediate hearing should Polar find ALPA's response to its grievance to be unacceptable.

## The Underlying Grievance Regarding Defendants' Merger Obligations

11.    Polar is a wholly owned subsidiary of Atlas Air Worldwide Holdings, Inc. ("AAWH"). AAWH also wholly owns and operates another subsidiary named Atlas Air, Inc. ("Atlas"). Like Polar, Atlas is a commercial air carrier. In November 2004, AAWH announced its intent to merge the crew forces of Polar and Atlas, and notified both the Polar MEC, the Atlas Master Executive Council (the "Atlas MEC"), and ALPA that the AAWH Board of Directors had directed management to take the necessary steps to integrate the crewmember seniority lists of Atlas and Polar.

12.    Section 1.D. of the Polar Agreement governs mergers as to Polar crewmembers, and sets forth Defendants' responsibilities regarding it obligations to negotiate with Polar regarding the terms of a single collective bargaining agreement ("SCBA") in the event of a merger. (A copy of Section 1 of the Polar Agreement is attached hereto as Exhibit D.)  In addition to section 1.D, Defendants' obligations to engage in merger negotiations are also set forth in a side letter agreement to the Polar Agreement entered by the parties titled "Return to Work Agreement" (the "RTW Agreement"). Pursuant to paragraph F of the RTW Agreement, the Polar MEC obligated itself to undertake certain actions necessary to merge Polar and Atlas, and expressly confirmed that the merger provisions of Section 1.D.1.e of the Polar Agreement would be deemed to be in effect. (A copy of the RTW Agreement is attached hereto as Exhibit E.)

13.    In July 2006 the Polar and Atlas MECs' respective merger committees began the process of integrating the Polar and Atlas crewmember seniority lists. That process was completed on November 21, 2006, when Arbitrator Robert O. Harris issued his final and binding Opinion and Award in the matter and issued an integrated crewmember seniority list.

14.    Defendants are in breach of their obligations under both Section 1.D of the Polar Agreement and Paragraph F of the RTW Agreement by refusing to complete the merger of the Polar and Atlas crew forces and their continuing refusal to engage in negotiations over the terms of a SCBA to govern both Polar and Atlas crewmembers, the final step required to complete the

5

merger. Since announcing the merger, Polar and Atlas have repeatedly attempted to commence negotiations with the Polar MEC and Atlas MEC regarding the terms of a SCBA. Although protocols for the completion of the SCBA already exist in both the Polar Agreement and the Atlas-ALPA collective bargaining agreement, Polar and Atlas have repeatedly expressed their willingness to consider an alternative merger protocol agreement to facilitate completion of these required negotiations. In that regard, Polar and Atlas provided Defendants and the Atlas MEC with several protocol proposals, the most recent dated August 1, 2007. Despite these efforts, Defendants repeatedly refused to begin the required negotiations for a SCBA.

15.     Given Defendants' refusal to comply with their contractual obligations to commence negotiations for a SCBA, on July 10, 2007, Polar was forced to file a company grievance against the Polar MEC and Atlas was forced to file a company grievance against the Atlas MEC to compel the immediate commencement and timely completion of a SCBA as required by each of Atlas and Polar's respective collective bargaining agreements and the RTW Agreement. Each of the grievances also demanded that any required arbitration of the company grievances be scheduled and heard immediately. (A copy of the grievance filed against the Polar MEC and accompanying cover letter is attached hereto as Exhibit F.)

16.     By letter dated July 26, 2007, ALPA, on behalf of the Atlas MEC only, conceded the merit of the grievance against it and admitted that it is obligated to proceed with negotiation of an SCBA. Additionally, on or about August 1, 2007, the Atlas MEC signed the company's proposed Merger Protocol Letter of Agreement.

### Defendants' Refusal To Participate In Arbitration Regarding Polar's Grievance

17.     By letter dated August 2, 2007, sent on behalf of the Polar MEC, ALPA stated that it did not agree with Polar's grievance against the Polar MEC. ALPA acknowledged Polar's right to file the grievance, but stated that Polar was not entitled to schedule and hear its grievance until every other pending grievance filed by ALPA is scheduled and heard first. (A copy of ALPA's August 2, 2007 letter sent in response to Polar's grievance is attached hereto as Exhibit

6

G.) Notably, there are currently over 100 ALPA grievances pending. During the nearly eight year life of the Polar Agreement, Defendants have only scheduled three grievances for arbitration (other than discharge and discipline matters) and each of those three grievances have been related to "Scope" provisions of the Polar Agreement, which pursuant to Section 1.F of the Polar Agreement are eligible for expedited arbitration. In this same nearly eight-year period, the Defendants have scheduled *no* general contract grievances for arbitration, thus creating a significant backlog of ALPA filed grievances.

18.    The July 10, 2007 grievance filed by Polar is the only company grievance pending. In addressing the processing of grievances, there is no language in the Polar Agreement or System Board Protocol which states or in any way suggests that all ALPA grievances must be processed and heard before a pending company grievance can be scheduled. Indeed, the Polar Agreement and the System Board Protocol provide for no order of grievances to be heard at arbitration (other than that Scope grievances filed by ALPA may be expedited directly to the System Board). The Polar Agreement and the System Board Protocol do state, however, that "[e]ither party may initiate the scheduling of a grievance for arbitration by notifying the arbitrator to be assigned the grievance in writing of the following information... ." (Exhibit A at ¶ 1.e.)

19.    Defendants' proposed interpretation of the Polar Agreement and System Board Protocol would lead to absurd results because ALPA could always significantly (or indefinitely) delay the processing of a company grievance given the fact that there are always a large number of pending ALPA grievances (currently approximately 100). Moreover, there is no past practice between the parties that establishes a requirement that all ALPA grievances must be processed and heard before a company grievance can be scheduled for hearing.

20.    In addition to the contractual rights set forth in the System Board Protocol of either party to initiate the scheduling of a grievance, Paragraph K of the RTW Agreement states that disputes regarding the interpretation of the RTW Agreement, which includes promises by

7

Defendants to proceed with the merger, are to be expedited by reference to Section 1.F of the Polar Agreement.

21. As set forth in ALPA's August 2, 2007 letter, Defendants assert that the correct interpretation of Section 1.F of the Polar Agreement and Paragraph K of the RTW Agreement is that those provisions only allow ALPA to bring grievances on an expedited basis. Polar disagrees with Defendants' interpretation.

22. In a series of conversations following receipt of ALPA's August 2 letter and occurring between August 2 and 8, 2007, between counsel for Plaintiff and Defendants' representative, Polar's counsel expressed Polar's view that it is entitled to schedule its July 10, 2007 grievance for immediate hearing before the System Board.

23. On August 8, 2007, Polar's counsel sent an e-mail to Defendants' representative informing him that on behalf of Polar, and consistent with the System Board Protocol (and Defendants' expressed interpretation of the System Board Protocol), he would be contacting the next arbitrator on the parties' panel list to advise the arbitrator that that he had been assigned to serve on the System Board to address the July 10, 2007 grievance filed by Polar, and also to request immediate hearing dates. Polar's counsel also confirmed that to the extent that Defendants intended to object to the right of Polar to have its grievance scheduled and heard on an immediate basis, Defendants were free to raise that issue before the System Board. (A copy of the August 8, 2007 e-mail from Polar's counsel is attached hereto as Exhibit H.)

24. After sending the e-mail to Defendants' representative, Polar's counsel contacted the next arbitrator in line on the parties' standing panel. Polar's counsel explained to the arbitrator that he was being assigned the grievance per the System Board Protocol. Polar's counsel also explained that ALPA would likely contest Polar's claim that it had the right to schedule its grievance for immediate arbitration, and suggested a pre-hearing call to address that threshold issue. The arbitrator proposed scheduling a conference call on August 13, 2007, to address the question of whether Polar's July 10, 2007 grievance should be scheduled for an immediate hearing. Shortly thereafter, Polar's counsel sent Defendants' representative an e-mail

describing his conversation with the arbitrator, and asking Defendants' representative to make himself available for the conference call with the arbitrator on August 13, 2007, to "resolve this preliminary 'minor dispute' on a prompt basis." (A copy of the August 8, 2007 e-mail from Polar's counsel is attached hereto as Exhibit I.)

25.    On August 9, 2007, Polar's counsel sent another e-mail to the arbitrator (with a copy to Defendants' representative) attaching documents relevant to the proposed call on August 13, 2007. (A copy of the August 9, 2007 e-mail from Polar's counsel is attached hereto as Exhibit J.)

26.    On August 10, 2007, Defendants' representative sent an e-mail stating that ALPA would not join a conference call on August 13, 2007. ALPA stated that it would be available the week of August 20, but that its agreement to conference with Polar representatives and the arbitrator at that time "should not be construed as indicating that ALPA is participating in any Pre-Conference Hearing of the Company's grievance." ALPA also stated that its "participation should not be construed as indicating that ALPA concurs that Polar or Polar Worldwide has the right to have its grievance adjudicated on an expedited basis, that Polar's grievance has merit, that the Company has any right to assign the grievance to a particular panel arbitrator at this time or that Arbitrator Horowitz has jurisdiction to preside over the Company's grievance at this time." (A copy of this August 10, 2007 e-mail from Defendants' representative is attached hereto as Exhibit K.)

27.    Polar's counsel than responded by e-mail to Defendants' representative and the arbitrator confirming that Polar was available for a call during the week of August 20. Polar's counsel also responded to Defendants' statements regarding the jurisdiction of the arbitrator to hear the grievance, stating that if ALPA "think[s] a different arbitrator should be assigned, please so advise us, and the basis for this contention. But certainly you cannot credibly contend that no arbitrator should be assigned." (A copy of this August 10, 2007 e-mail from Polar's counsel is attached hereto as Exhibit L.)

28.    Shortly thereafter, the arbitrator sent an e-mail stating that he was available for a conference during August 20-23, 2007. The arbitrator also stated that, based on the exchange of e-mails, it appeared that the parties have not yet agreed that he had been mutually selected and that, absent such agreement, he would "decline the exercise of jurisdiction until a court ordered otherwise." (A copy of the arbitrator's August 10, 2007 e-mail is attached as Exhibit M.) (Emphasis added.)

29.    Next, Polar's counsel sent an e-mail asking Defendants' representative to confirm, by the close of business on August 13, 2007, whether ALPA is willing to pick a date during the week of August 20 for argument and submission to the arbitrator on the preliminary issues related to scheduling of Polar's grievance. Polar's counsel stated it appeared that ALPA was arguing that no arbitrator has jurisdiction to decide the preliminary minor dispute regarding scheduling of the grievance, and that ALPA's position was that it was somehow allowed unilaterally to decide the dispute. Polar's counsel also stated that if ALPA did not respond by close of business on August 13, 2007, then Polar would have no option but to conclude that ALPA is refusing to submit that preliminary issue to arbitration and would proceed accordingly. (A copy of this August 10, 2007 e-mail from Polar's counsel is attached as Exhibit N.)

30.    On August 13, 2007, Defendants' representative sent an e-mail stating that their position remained as previously stated (*i.e.*, that they were not agreeing to submit the preliminary issues regarding the timing of the hearing on the grievance and were not agreeing that the arbitrator had jurisdiction). After receiving Defendants' August 13 e-mail, Polar's counsel sent an e-mail on that same date asking the arbitrator to confirm his prior statement that, without ALPA's concurrence, he would not preside over the hearing in the absence of a court order. (A copy of this August 13, 2007 e-mail chain is attached as Exhibit O.)

31.    On August 15, 2007, the arbitrator sent an e-mail stating that, absent mutual agreement by the parties, he did not have authority to act. (A copy of this August 15, 2007 e-mail is attached as Exhibit P.)

10

## CLAIM FOR RELIEF

32.    Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-31, inclusive.

33.    This action is governed by the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* Pursuant to Section 21 of the Polar Agreement, the System Board "shall have jurisdiction over disputes between a Crewmember covered by this Agreement and the Company, or between the Company and the Association, growing out of the interpretation or application of any of the terms of this Agreement or amendments thereto." *See also* 45 U.S.C. § 184. The parties disagree regarding the proper interpretation of the general provisions of the Polar Agreement and System Board Protocol regarding the processing and scheduling of grievances, as well as the specific language in Section 1.F of the Polar Agreement and Paragraph K of the RTW Agreement regarding the ability to expedite grievances alleging violation of the merger provisions. The disagreement regarding the interpretation and application of these agreements constitutes a "minor dispute" under the Railway Labor Act and, as such, must be resolved by the System Board.

34.    While Defendants may assert their own proposed interpretation of the relevant agreements and specific provisions, and may argue before the System Board for adoption of their proposed interpretation, they are not permitted simply to refuse to participate in an arbitration to resolve the parties' dispute. By refusing to participate, ALPA is unilaterally resolving the issue in its favor. And, by so doing, Defendants have violated, continue to violate, and intend to further violate their duty under the Railway Labor Act, 45 U.S.C. § 184. Defendants have also violated, continue to violate, and intend to further violate their duty under the Railway Labor Act to "exert every reasonable effort to make and maintain agreements . . . and to settle all disputes, whether arising out of the application of such agreement or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." 45 U.S.C. § 152, First.

35.     The federal courts have the authority under the Railway Labor Act to compel arbitration of contractual disputes like the dispute between Polar and Defendants over Polar's right to schedule its grievance for a hearing. *See, e.g., Western Airlines v. International Bhd. of Teamsters*, 480 U.S. 1301, 1302 (1987).  The Supreme Court has found that the Railway Labor Act's language is "unequivocal" that "either side may submit the dispute to the Board." *Brotherhood of R.R. Trainmen v. Chicago R. & I. R.*, 353 U.S. 30, 34 (1957).

36.     An order compelling Defendants promptly to arbitrate the parties' dispute is necessary to preserve the integrity of the Railway Labor Act's dispute-resolution procedures and the jurisdiction of the System Board.

WHEREFORE, Polar respectfully requests that this Court enter an Order:

1.     Compelling Defendants to engage in an arbitration hearing before Arbitrator Frederick R. Horowitz (on the earliest date Arbitrator Horowitz is available following entry of this Court's Order);

2.     Awarding Plaintiff its costs and attorneys' fees in bringing this action; and

3.     Granting Polar such other relief as the Court may deem just and proper.

Date:   August 16, 2007.          Respectfully submitted,


O'MELVENY & MYERS LLP

By:_____
        Robert A. Siegel
        Jeffrey I. Kohn
        Anh T. LyJordan


Times Square Tower
7 Times Square
New York, New York 10036
(212) 326-2000

*Counsel for the Plaintiff Polar Air Cargo Worldwide, Inc.*

# EXHIBIT A

SECTION 21

# SYSTEM BOARD OF ADJUSTMENT

**A.    System Board of Adjustment.**

In compliance with Section 204, Title II of the Railway Labor Act, as amended, there is hereby established a System Board of Adjustment, which shall be known as the Polar Air Cargo Crewmembers' System Board of Adjustment (the "Board").

**B.    Jurisdiction of the Board.**

1.    As provided by the Railway Labor Act, the Board shall have jurisdiction over all disputes between a Crewmember covered by this Agreement and the Company, or between the Company and the Association, growing out of the interpretation or application of any of the terms of this Agreement or amendments thereto.

2.    The Board's jurisdiction shall not extend to any proposed changes in rates of pay, rules or working conditions. The Board shall not have any jurisdiction to add to, subtract from, modify or amend any of the terms of this Agreement.

3.    In cases arising under Section 20 of this Agreement, the Board's jurisdiction shall be limited to a consideration of the specific substantive issue(s) stated in the written grievance filed pursuant to Section 20.A.1, and any issues arising from the subsequent processing of the grievance (for example, issues related to the hearing of the grievance under Section 20.A.1).

4.    The Board shall not have jurisdiction to consider any dispute in which the appealing party has not complied with the applicable provisions of Sections 19 or 20 of this Agreement, or which has not been submitted to the Board in a timely manner.

5.    As provided by the Railway Labor Act, the decisions of the Board shall be final and binding.

**C.    Proceedings Before the Board.**

1.    The Board shall consist of three (3) members. One member shall be designated by the Association, and one member shall be designated by the Company. The third member shall be selected on a case-by-case basis from a panel of neutral arbitrators pursuant to the provisions of Paragraph C.3. A majority of the Board's members shall be competent to decide a dispute submitted to it.

2.    Appeal/Submission.

a.    The written appeals required by Section 19.D and Section 20.B of this Agreement shall be delivered to the Company's Vice President-Flight Operations and the Association's Polar Air Cargo Master Executive Council Chairman, who shall designate the Company's and the Association's respective Board members for the particular case.

b.    The written appeals required by Section 19.D and Section 20.B of this Agreement shall contain the appealing party's submission to the Board. The submission shall specifically state:

75

       i.     The question(s) at issue;

      ii.    A statement of facts;

     iii.   The position of the Crewmember; and

     iv.   The position of Company.

3.    Selection of Neutral Arbitrator.

    a.    The Company and the Association have established the following panel of potential arbitrators:

       i.     Michael Beck;

      ii.    Howard Block;

     iii.   John LaRocco;

     iv.   William Rule;

      v.    Anthony Sinicropi.

    b.    Beginning ten (10) days after receipt of the appeal to the Board of Adjustment, either the Company, the grievant or his representative, or the Association shall have the right to select a neutral arbitrator to serve as the third member of the Board. The arbitrator shall be selected by mutual agreement of the parties, or by alternately striking names from the above panel until one name remains. The initial strike will be determined by a coin toss.

    c.    The neutral arbitrator selected by the parties in accordance with Paragraph C.3.b shall be the third member of the Board and shall serve as the Board's Chairman for that particular case.

4.    Hearing.

    a.    Either the Association or the Company may notify the neutral arbitrator selected by the parties of the nature of the case (i.e., "contract interpretation" or "discipline/discharge") and the time estimate for the hearing, and solicit available date(s) on which to schedule the hearing. Upon receipt of available dates by the Company and the Association, the parties shall attempt in good faith to agree on a mutually acceptable date. If they cannot do so within ninety (90) calendar days of the first receipt of available date(s) from the arbitrator, or within sixty (60) calendar days in discharge cases, either party may inform the arbitrator that he has the authority to set the date(s) for the hearing, and request that he do so.

    b.    Unless mutually agreed otherwise, the hearing may take place only at the Company's general offices or an alternate location which must be within Los Angeles County, California. If, upon a request from one party opposed by the other party, the arbitrator orders a hearing to be conducted at a location other than the Company's general offices, the party requesting the alternate location shall pay all costs related to conducting the hearing at the alternate site.

    c.    A stenographic record of any hearing pursuant to this Section shall be made unless the parties mutually agree otherwise. All costs related to the preparation of the record (including a certified court reporter's appearance and transcription fees) shall be borne equally by the parties.

76

  d. The grievant may be represented at the hearing, and the parties may present witnesses and evidence, in accordance with the provisions of Section 18.

**D.** **General.**

 1. Time Limits.

  a. The time limits contained in this Section may be extended by written or oral agreement between the parties. Oral agreements shall be confirmed in writing as soon as practicable by the party which requested the extension.

  b. In the event a time limit contained in this Section, or any mutually-agreed extension thereof, expires on a weekend or Company holiday, the time limit shall be extended to the next business day.

 2. Notifications.

  a. The original(s) of all appeals and notifications, and any other correspondence concerning specific cases, shall be sent by Certified Mail, personal delivery, or overnight delivery by a commercially recognized courier service. A signed and dated receipt is required for proof of delivery.

  b. Copies of the above documents shall be provided to the Association's Los Angeles Contract Administration Office and to the Company's Vice President-Administration or designee. In addition to the methods of delivery listed above, such copies may be transmitted by facsimile.

 3. Expenses.

  a. The expenses and reasonable compensation of the neutral arbitrator selected in accordance with Paragraph C.3 shall be borne equally by the Company and the Association.

  b. Except as expressly provided otherwise, the Company and the Association shall respectively assume the compensation, travel expense and other expenses of the Board members designated by them.

   i. To the extent permitted by law and authorized by Company policy, the Board member designated by the Association shall be provided free space available transportation over the lines of the Company for the purpose of attendance at meetings of the Board.

   ii. The Company shall release from duty the Board member designated by the Association to the extent a release from duty is necessary for attendance at meetings of the Board. The Company may assign such a Crewmember additional flight duty, prior to or following the meeting(s) of the Board, for the same number of scheduled days (not necessarily consecutive) as the trip(s) projected to be missed.

  c. The Company and the Association shall respectively assume the compensation, travel expense and other expenses of the witnesses called by them.

  d. Upon mutual advance agreement of the Association and the Company in each particular instance, the Board may incur expenses necessary for its decision of a case and such expenses shall be borne equally by the Company and the Association.

77

4.    It is understood and agreed that each and every Board member shall be free to discharge his duty in an independent manner, without fear that his individual relations with the Company, the Association or other employees may be affected in any manner by any action taken by him in good faith in his capacity as a Board member.

78

# EXHIBIT  B

**LETTER OF AGREEMENT**
between
**POLAR AIR CARGO, INC.**
and
**THE AIR LINE PILOTS**
in the service of
**POLAR AIR CARGO, INC.**
as represented by
**THE AIR LINE PILOTS ASSOCIATION**
**INTERNATIONAL**

---

## SYSTEM BOARD OF ADJUSTMENT

---

THIS LETTER OF AGREEMENT is made and entered into in accordance with the provisions of the Railway Labor Act, as amended, by and between POLAR AIR CARGO, INC. (hereinafter referred to as the "Company") and the AIR LINE PILOTS in the service of POLAR AIR CARGO, INC. as represented by the AIR LINE PILOTS ASSOCIATION, INTERNATIONAL (hereinafter referred to as the "Association").

### WITNESSETH:

WHEREAS, the parties desire to establish a new panel of neutral arbitrators to replace those on the existing panel who have become unavailable to preside over Board matters.

NOW, THEREFORE, the parties mutually agree as follows:

1.  Section 21.C.3 (Selection of Neutral Arbitrator) is replaced by the following new Section 21.C.3 which reads as follows:

21.C.3  Selection of Neutral Arbitrator

    a.    There will be a standing panel of ten (10) arbitrators for the term of this Agreement from which the parties will select the neutral arbitrator to sit as chairperson of the System Board.

    b.    Each party will appoint five (5) persons to the standing panel, each of whom must be a member of the National Academy of Arbitrators with expertise and experience in airline labor arbitration unless the parties mutually agree to waive these requirements as to one or more appointees.

    c.    The names of the arbitrators appointed to the standing panel will be placed on a list in random order established by a random drawing of each arbitrator's name. The list of arbitrators will be set forth in an attached addendum to this Agreement no later than February 1, 2005. If the responsible party does not appoint its five persons to the standing panel by

1

February 1, 2005, the other party may appoint the remaining required number of arbitrators to the panel.

d.  In the event an arbitrator appointed to the standing panel is unable or unwilling for any reason to continue service on the panel, that arbitrator may be removed from the panel and replaced with another qualified arbitrator by the party that appointed the arbitrator being replaced. If the responsible party does not name and advise the other party of its replacement within ninety (90) days from a determination that its appointed arbitrator is to be replaced pursuant to this paragraph, the other party may name a replacement to the panel. The side letter of arbitrators shall be amended, placing the newly appointed arbitrator in the position on the list that was occupied by the arbitrator that he replaced.

e.  Unless the parties agree to use a particular arbitrator from the standing panel, or have agreed to utilize another means of selecting an arbitrator from the panel, grievances to be scheduled shall be assigned to arbitrators in the order in which their names appear on the standing panel. Either party may initiate the scheduling of a grievance for arbitration by notifying the arbitrator to be assigned the grievance in writing of the following information. A copy of the written submission to the arbitrator shall be sent to the other party at the same time that it is sent to the arbitrator. Further, the arbitrator will be advised of the following:

i.  That the arbitrator has been selected on the basis of his name appearing on a standing panel inclusive to this Agreement.

ii.  The name and number of the grievance, and whether it is a contract dispute or a discipline/discharge matter.

iii.  The scheduling party's estimated number of days required to hear the grievance.

iv.  The city in which the hearing is likely to be held.

f.  The arbitrator will be asked to provide to both parties his available dates for hearings for the next sixty (60) days. If the earliest available date provided by the arbitrator is more than sixty (60) days from the date of the initial request then either party may elect to bypass that arbitrator and proceed to the next arbitrator listed on the standing panel and repeat the applicable procedures.

g.  Upon receipt of the arbitrator's dates of availability, the parties will confer regarding a mutually agreeable date or dates for the hearing. If no date has been agreed upon within fourteen (14) days from the date the arbitrator provided his dates of availability then either party may request in writing, with a copy to the other party, that the arbitrator schedule the hearing. Upon receipt of such a request the arbitrator will schedule the

2

hearing.

h.      The above listed provisions providing for notifications and communications with the arbitrator shall not be construed to permit any unauthorized ex parte communication with the arbitrator regarding the nature or merits of the grievance to be heard.

i.      Not withstanding the foregoing, the parties may waive the standing panel and utilize any system mutually agreeable for the selection of a neutral arbitrator to hear a particular case, including mutual agreement as to a particular individual or the use of a panel of neutral arbitrators obtained from an appropriate agency and utilizing the alternate strike method.

2.      Section 21.C.4.a shall no longer be applicable.

3.      This Letter of Agreement shall become effective as of its Date of Signing, and shall continue in effect until a successor Agreement is reached by the parties to the Agreement effective December 1, 1999 to November 30, 2002, as extended through May 31, 2003, by the Pay Increase, Maximum Pay and Credit Cap Modification and Duration Extension Letter of Agreement dated May 30, 2002, at which time this Letter of Agreement shall automatically be incorporated and made a part of said successor Agreement.

**IN WITNESS WHEREOF, the parties have signed this Letter of Agreement this** _15th_ **day of December, 2004.**

FOR
POLAR AIR CARGO, INC.

James R. Cato
Vice President Flight Operations

_____

_____

FOR THE
AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL

Duane E. Woerth, President

Robert Henderson, Chairman
Polar Air Cargo MEC

Mike Cushanick, Vice Chairman
Polar Air Cargo MEC

Bob Hester, Secretary-Treasurer
Polar Air Cargo MEC

3

# EXHIBIT  C

ADDENDUM
to
LETTER OF AGREEMENT
between
POLAR AIR CARGO, INC.
and
THE AIR LINE PILOTS
in the service
POLAR AIR CARGO, INC.
as represented by
THE AIR LINE PILOTS ASSOCIATION
INTERNATIONAL

---

### SYSTEM BOARD OF ADJUSTMENT

---

THE SYSTEM BOARD OF ADJUSTMENT LETTER OF AGREEMENT dated December 15, 2004, entered into in accordance with the Railway Labor Act, as amended, by and between POLAR AIR CARGO, INC. and the AIR LINE PILOTS in the service of POLAR AIR CARGO, INC., as represented by the AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, is hereby amended pursuant to Paragraph 1.c thereof to include the names of the arbitrators appointed to the standing panel as set forth below.

HERBERT FISHGOLD
RICHARD I. BLOCH
REDERICK R. HOROWITZ
JAMES E. CONWAY
MICHAEL H. BECK
ROBERT M. O'BRIEN
GEORGE NICOLAU
DAVID L. BECKMAN
RICHARD KASHER
NICHOLAS ZUMAS

IN WITNESS WHEREOF, the parties have signed this Addendum this 24th day of May, 2006.

POLAR AIR CARGO, INC.                    AIR LINE PILOTS ASSOCIATION, INT'L

James R. Cato, Vice President Flight       Robert T. Henderson, Chairman, Polar
Operations                                 Air Cargo MEC

# EXHIBIT  D

SECTION 1

**RECOGNITION, SCOPE, SUCCESSORSHIP, LPPS, SUBCONTRACTING AND MANAGEMENT RIGHTS**

A.   **Recognition.**

    1.   In accordance with the National Mediation Board's Certification in Case Number R-6454, issued on October 8, 1996, Polar Air Cargo, Inc. (the "Company") recognizes the Air Line Pilots Association, International (the "Association") as the collective bargaining representative of the flight deck crew members employed by the Company.

    2.   This Collective Bargaining Agreement and any formal Letters of Agreement between the Company and the Association may be collectively referred to as the "Agreement."

B.   **Scope.**

    1.   Except to the extent expressly provided otherwise in this Section or elsewhere in this Agreement, all present and future flying performed by the Company, or by any other airline which is owned, controlled or operated by the Company or by Polar Air Cargo Holdings, Inc., including, but not limited to, revenue flying, ferry flights, charters, and wet leases, shall be performed by Crewmembers whose names appear on the Polar Air Cargo Crewmembers System Seniority List in accordance with the terms and conditions set forth in this Agreement.

    2.   The Company shall not directly or indirectly sell, lease or otherwise transfer any aircraft owned, leased or operated by the Company to any airline which is owned, controlled or operated by the Company or by Polar Air Cargo Holdings, Inc. if such sale, lease or transfer will directly cause a reduction in force, unless the flying of such aircraft by such airline is performed by Crewmembers on the Polar Air Cargo Crewmembers System Seniority List in accordance with this Agreement.

C.   **Successorship.**

    1.   This Agreement shall be binding upon any successor of the Company, including, without limitation, any merged company or companies, assignee, purchaser, transferee, administrator, receiver, executor, and/or trustee of the Company, unless and until changed in accordance with the provisions of the Railway Labor Act. For purposes of this paragraph, a successor shall be defined as an entity which acquires all or substantially all of the assets or equity of the Company through a single transaction or multi-step related transactions that close within a twelve (12) month period. Subject to the provisions of Paragraph D below (if applicable), the Company shall require a successor to assume and be bound by all the

terms of this Agreement as a condition of any transaction that results in a successor.

**D.    Labor Protections.**

1.    In the event of a complete operational merger between the Company and another air carrier (i.e., the combination of all or substantially all of the assets of the two carriers), the following seniority-integration procedures will apply:

    a.    If the crewmembers of both pre-merger carriers are represented by the Association, there shall be a seniority integration of the two crewmember groups in accordance with the Association's Merger Policy;

    b.    If the crewmembers of the two pre-merger carriers are represented by different labor organizations, there shall be a seniority integration of the two crewmember groups in accordance with Sections 3 and 13 of the Allegheny-Mohawk Labor Protective Provisions;

    c.    The successor (including the Company, if applicable) shall accept the integrated seniority list, including any conditions and restrictions, established through Association merger policy or LPP proceedings, as applicable, provided that such conditions and restrictions do not result in retroactive monetary liability on the part of either pre-merger carrier and do not require upgrade or transition training of any crewmember(s); and

    d.    The respective crewmembers' collective bargaining agreements shall be merged into one (1) agreement as the result of negotiations between the post-merger representative of the crewmembers and the successor. If a fully merged agreement is not executed within nine (9) months from the date an integrated seniority list is presented to the successor, the parties shall jointly submit outstanding issues to binding interest arbitration; and

    e.    The aircraft (including orders and options to purchase aircraft) and the operations of each pre-transaction airline shall remain separated until such time as both the crewmember seniority lists are integrated and the crewmember collective bargaining agreements are combined in accordance with paragraphs 1.b through 1.d herein. It shall not be deemed a violation of Sections 1.B or 1.C for a successor (including the Company, if applicable) to maintain and operate the two pre-merger entities as separate airlines pending the integration of seniority lists and

negotiation of a consolidated collective bargaining agreement in accordance with this Paragraph D.

**E.    Subcontracting.**

1.    "Subcontracted Revenue Flying" shall include and be limited to transactions in which the Company pays a sum of money to another air carrier or third-party contractor pursuant to an agreement whereby (i) the other carrier or third-party contractor transports cargo consigned to the Company using the carrier's or third-party contractor's aircraft and/or crewmembers, and (ii) the Company receives all of the revenue collected for the transport of cargo on the aircraft.

2.    The Company may only engage in Subcontracted Revenue Flying under the following circumstances:

    a.    When the Company determines that it does not have sufficient or appropriate aircraft to perform the Subcontracted Revenue Flying; or

    b.    When the Company determines that it does not have a sufficient number of appropriately-trained Crewmembers on the B747-100 or –200 to perform the Subcontracted Revenue Flying, and the Company utilizes both the aircraft and crewmembers of the other carrier or third-party contractor; or

    c.    When the Company determines that it does not have a sufficient number of appropriately-trained Crewmembers, on aircraft other than the B747-100 or –200, to perform the Subcontracted Revenue Flying, and the Company utilizes the crewmembers and/or aircraft of the other carrier or third-party contractor.

3.    The Company shall provide prompt written (but not necessarily prior) notice to the Association of each episode of Subcontracted Revenue Flying.

4.    Each episode of Subcontracted Revenue Flying under Paragraphs 2.a or 2.c shall be limited in duration to one hundred eighty (180) days, and each episode of Subcontracted Revenue Flying under Paragraph 2.b shall be limited in duration to ninety (90) days.  The time limitations in this Paragraph are not applicable where the Company has exercised its best efforts to obtain sufficient appropriate aircraft or appropriately-trained Crewmembers, but has been unable to do so.  In situations arising under Paragraph 2.b or 2.c, the Company shall begin the training of Crewmembers to fill vacancies created by the addition of aircraft to the Company's fleet within thirty (30) days from the inception of the Subcontracted Revenue Flying.

5.    The Company shall not implement a furlough of any Crewmember or reduce any Crewmember in status (i.e. reduced in job classification, position, type of aircraft, or relative seniority bid position) as a direct result of engaging in any such Subcontracted Revenue Flying.

6.    In addition to the other restrictions on Subcontracted Revenue Flying set forth in this Section 1.E, the following provisions shall be applicable whenever there are Crewmembers on furlough:

a.    The Company shall provide pay protection for each episode of Subcontracted Revenue Flying when Crewmembers are on furlough. The pay protection shall equal the Total Pay Hours (i.e., Flight Hours or Trip Hour Credit, whichever is greater) that would have been received by the senior crew on furlough (i.e., the two senior pilots and senior flight engineer) to fly the scheduled trip(s). Once the senior crew's pay protection in a month reaches the applicable minimum monthly guarantee, any additional pay protection for Subcontracted Revenue Flying in that month shall be paid to the next crew (on furlough) in seniority order, and so on.

b.    The pay-protection requirement in Paragraph 6.a does not apply if the basis for the Subcontracted Revenue Flying is a shortage of aircraft caused by the termination of an aircraft lease. This exception to the pay-protection requirement is only applicable to the first ninety (90) days of the Subcontracted Revenue Flying and only if the Company has exercised its best efforts to obtain additional aircraft. After the first ninety (90) days of Subcontracted Revenue Flying, the Company shall always provide pay protection under Paragraph 6.a.

7.    The provisions of paragraphs 2-6 herein are not applicable when the Company engages in Subcontracted Revenue Flying due to circumstances over which it does not have control. The Company may engage in Subcontracted Revenue Flying under such a scenario for a period not to exceed the duration of the circumstance beyond the Company's control. Circumstances beyond the Company's control shall be limited to: an act of nature; a labor dispute; grounding of any Company aircraft by a government agency or court after the effective date of this Agreement; loss or destruction of any Company aircraft; involuntary reduction in flying operations due to a decrease in available fuel supply or other materials critical to the company's operation; revocation of the Company's operating certificate or route authorities; and war emergency.

8.    Subcontracted Revenue Flying does not include flying performed by another air carrier whereby the other carrier transports cargo consigned to the Company pursuant to an interline agreement, a code-share agreement, a marketing agreement, a pro-rate agreement, or a blocked-space

agreement. There shall be no contractual restrictions on such flying or any other flying performed pursuant to any other marketing or alliance arrangement, except that the Company shall not furlough any Crewmember or reduce any Crewmember in status (i.e. reduced in job classification, position, type of aircraft, or relative seniority bid position) as a direct result of the entry into or implementation of any such interline, code-share, marketing, pro-rate, blocked-space or alliance agreement or arrangement. It is understood and agreed, however, that nothing in this Paragraph E.8 shall prevent the Company from furloughing or reducing in status any Crewmember for economic reasons independent of the Company's entry into and implementation of such transactions.

**F.    Remedies.**

1.    The Company agrees that any grievance filed by the Association alleging a violation of Section 1 shall bypass the initial steps of the grievance process and shall be submitted, heard, and resolved through binding arbitration on an expedited basis directly before the Polar Air Cargo Crewmembers' System Board of Adjustment sitting with a neutral arbitrator. The dispute shall be heard as soon as possible after the submission to the System Board and decided no later than 30 days after the close of the hearing, unless the parties agree otherwise in writing.

**G.    Management Rights.**

1.    Except as specifically limited by the express language of this Agreement, the Company shall retain the sole and exclusive right to manage and operate its business, including, without limitation, the right to: direct all employees; determine the appropriate number of employees; hire, promote and discharge; establish and enforce rules of conduct; maintain discipline and efficiency; introduce new equipment; determine the location(s) of the work force, operations and facilities; plan, direct and control operations; expand, limit or curtail operations when deemed advisable to do so; sell all or part of the business; sell or lease aircraft or facilities; determine when and where to operate scheduled or unscheduled flights; determine marketing methods and strategies; enter into code sharing, affiliation or marketing arrangements with other air carriers; and invest (including equity investments) in other business entities, including other air carriers.

2.    The Company's exercise of any retained right in a particular manner, or the non-exercise of such right, shall not operate as a waiver of the Company's rights hereunder, or preclude the Company from exercising its right(s) in a different manner.

3.    Any practices or policies prior to the date of signing of this Agreement shall not create any contractual or legal obligation on the part of the

Company to continue such practices or policies after the date of signing of this Agreement.

# EXHIBIT E

**TENTATIVE AGREEMENT**
**October 2, 2005**

LETTER OF AGREEMENT
Between
POLAR AIR CARGO, INC.
and the
AIR LINE PILOTS
in the service of
POLAR AIR CARGO, INC.
as represented by
THE AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL

---

Return to Work Agreement

---

THIS LETTER OF AGREEMENT is made and entered into in accordance with the provisions of Title I of the Railway Labor Act, as amended, by and between Polar Air Cargo, Inc. (hereinafter referred to as the "Company") and the AIR LINE PILOTS in the service of the Company, as represented by the AIR LINE PILOTS ASSOCIATION, INTERNATIONAL (hereinafter referred to as the "Association").

The parties hereto agree that the following shall address the Return to Work issues relating to the settlement of the strike that began September 16, 2005:

A.    Ratification

1.    The Polar Air Cargo MEC agrees to recommend ratification and exercise its best efforts to expedite the ratification process of the LOA entitled "Contract Extension Agreement." Upon notice of a successful ratification vote from the Association, the Company shall return all striking Polar Crewmembers to active service and the parties shall electronically execute this LOA.

2.    Upon tentative agreement for both the Return to Work and the Contract Extension Agreements, all self-help efforts by the Polar Air Cargo Crewmembers shall immediately cease unless and until contract ratification is unsuccessful.

B.    Pay, Benefits and Related Items

1.    Pay

a.    See Appendix A, Letter of Agreement Re: Return to Work Dispute Resolution dated October ___, 2005.

1

**TENTATIVE AGREEMENT**
**October 2, 2005**

    b.    All returning Crewmembers who were in active service on September 1, 2005, shall be paid no less than the applicable Minimum Monthly Guarantee for October 2005 and there shall be no prorated reduction to such Guarantee because of a Crewmember's unavailability due to the strike.

2.    <u>Insurance Benefits</u>

All returning Crewmembers who were in active service on September 1, 2005, shall suffer no interruption of insurance benefits covered under Section 27 of the Agreement due to the strike.

3.    <u>Seniority</u>

There will be no adjustment to any Polar Crewmember's seniority as a result of their unavailability due to the strike.

4.    <u>Longevity</u>

There will be no adjustment to any Polar Crewmember's longevity as a result of their unavailability due to the strike.

5.    <u>Vacation and Sick Leave</u>

    a.    All returning Crewmembers who were in active service on September 1, 2005, shall be considered to have accrued vacation and sick leave for the month of September 2005.

    b.    A returning Crewmember that was on sick leave status on September 15, 2005, shall be entitled to maintain such status throughout the strike period, if eligible medically for sick leave benefits for such period.

    c.    A returning Crewmember that was on vacation status on September 15, 2005 and scheduled to be on vacation during the strike, shall be entitled to such vacation status and benefits during the strike period.

    d.    A returning Crewmember that had vacation scheduled to start during the strike period shall have the option to either be paid vacation pay for such days or re-bid the vacation at a later time.

2

**TENTATIVE AGREEMENT**
**October 2, 2005**

    6.    <u>401k Company Match</u>

    Company 401k matching contributions shall not be affected by the strike and shall continue uninterrupted for any Crewmember deductions to the Plan.

    7.    <u>Travel Bank</u>

    A Crewmember's travel bank credit shall not be affected by the strike.

C.    <u>Crewmember Status</u>

    1.    The furlough notices issued September 9, 2005 shall be cancelled.

    2.    Any Crewmember that was on a leave of absence status under any of the provisions of Section 13 of the Agreement shall be deemed to have maintained such status throughout the strike period, provided the terms of such leave of absence extends to the return to active service date.

    3.    Any Crewmember that was in a training status under Section 11 of the Agreement shall be entitled to resume such status on the return to active service date.

    4.    Any Crewmember that was scheduled for an upgrade in status with an effective date during the strike period shall be entitled to such upgrade upon the return to active service date

D.    <u>Probationary Crewmembers who Received Section 19 Letters</u>

    1.    All Probationary Crewmembers held out of service without pay by the Company since August 15, 2005 shall be offered return to active service. For all such Crewmembers that return, the Company shall:

        a.    Restore them to the seniority list in the same relative position each returning Crewmember held prior to his being held out of service;

        b.    Credit them for all prior service and for such time as they were held out of service, but exclusive of the period from September 16, 2005 to DOS;

        c.    Provide them back pay for the time they were held out of service without pay, exclusive of the time that the Polar Crewmembers were on strike, based on the rate of pay and monthly guarantee that would have been applicable for each such Crewmember, but offset for any earnings they may have enjoyed if during the time they were held out of service they were employed by Atlas Air.

3

**TENTATIVE AGREEMENT**
**October 2, 2005**

    2.    Any such Crewmember who entered a new hire training class at Atlas, accepted a future training class date, or became employed by Atlas, shall be offered reemployment with the Company or reinstatement to Company active service, as may be required to return him to active service with the Company.

    3.    To receive the benefits provided under this paragraph D, each such Crewmember must accept return to active service or reinstatement within five (5) days from DOS by indicating such acceptance in writing to both the Company (office of the Chief Pilot) and the PAC MEC and each such Crewmember who accepts the offer of reinstatement to active service or employment shall be restored to active service or reinstated to employment, as the case might require, within ten (10) days after DOS.

    4.    All Company Section 19 letters to the probationary Crewmembers, during the period August 15, 2005 until DOS, including, but not limited to the following: (23 dated 8/22/05; 15 dated 8/29/05 & 3 dated 9/9/05) shall be revoked and the pending hearing procedures under Section 19 shall be cancelled.

    5.    The Personnel Files of all affected Crewmembers shall be purged of all correspondence related to such notices.

    6.    A probationary Crewmember that was in a training status under Section 11 of the Agreement at the time of his release from active service shall be entitled to resume such status on the return to active service date.

E.    <u>Aircraft Returned to Atlas</u>

Subject to the staffing conditions set forth below, the Company shall return to Polar from Atlas up to four (4) aircraft no later than thirty (30) days after DOS. The number of aircraft returned to Polar shall be dependent upon the number of probationary Crewmembers who accept return to active service (RTW) as provided in paragraph D above. The type of aircraft to be returned (Classic or 400) shall be at the Company's discretion. In determining the number of aircraft to be returned to Polar from Atlas the following shall apply:

| | | |
|---|---|---|
| 1. | 8-15  RTW | 1 Aircraft |
| 2. | 16-23 RTW | 2 Aircraft |
| 3. | 24-31 RTW | 3 Aircraft |
| 4. | 32+   RTW | 4 Aircraft |

Notwithstanding the foregoing, if an insufficient number of released probationary Crewmembers elect to return to work at Polar to trigger the return of at least two (2) aircraft to Polar from Atlas per the above, the Company shall promptly begin

4

**TENTATIVE AGREEMENT**
**October 2, 2005**

hiring a sufficient number of Crewmembers to assure the return of two (2) such aircraft to Polar, no later than DOS plus sixty (60) days for the first aircraft and DOS plus ninety (90) days for the second. The hiring and the related new hire training shall occur as quickly as reasonably possible.

F.    Merger

Within fourteen (14) days following DOS the Company shall file official notices of intent to reinstate the merger of Atlas Air and Polar Air Cargo with the DOT, FAA and NMB. Upon the Company taking the steps described in the previous sentence, the Polar MEC shall promptly take all steps necessary, including requesting that ALPA expeditiously set a Policy Initiation Date (PID) under its Merger and Fragmentation Policy, so as to begin the process of integrating the Polar and Atlas Crewmember seniority lists. Effective DOS, the provisions of Section 1.D.1.e shall be deemed to be in effect, provided, however, that if ALPA has not set a PID within ninety (90) days from DOS the provisions of Section 1.D.1.e will no longer be applicable until and unless ALPA sets the required PID.

G.    No Retaliation

1.    The Company agrees that there will be no discipline, harassment, retaliation, recrimination or reprisals by its management against any Polar Crewmember as a result of any lawful self-help activity. Any dispute over an alleged violation of this provision shall be subject to expedited arbitration under Section 1.F of the Agreement, but shall, however, be entitled, at ALPA's option, to have priority over any other disputes pending under said section.

2.    The Polar MEC pledges that it will not instigate any discipline, harassment, retaliation, recrimination or reprisals against any Atlas Air Crewmember as a result of any work the Atlas Air Crewmember may have performed for Atlas Air, Inc. during the strike.

H.    Atlas Air Crewmember Protection Letter

The Company shall execute the letter attached hereto as Appendix B relating to Atlas Air Crewmembers conduct during the strike.

I.    Restoration of Operations

The parties agree to exercise their best efforts and work cooperatively to expedite the restoration of operations. Both representatives of the Company and the MEC agree to meet and discuss the best means to accomplish this, including temporarily modifying or waiving provisions of the CBA if mutually agreed.

5

**TENTATIVE AGREEMENT**
**October 2, 2005**

J.    Litigation and Grievances

1.    The parties agree to stay any and all proceedings (and to grant any appropriate extensions of time to respond to pleadings) in the litigation captioned ALPA v. Atlas Worldwide Holdings, et al., No. CV-05-4150 (E.D.N.Y.); Upon ratification of the LOA entitled "Contract Extension Agreement", the Association agrees to as soon as reasonably possible withdraw and dismiss such litigation with prejudice.

2.    With regard to the matter captioned as Atlas Air, Inc. et al. v. ALPA et al., 05-CV-8237 (KMK) (S.D.N.Y.), the parties agree to file a joint stipulation with the Court on Monday morning, October 3, 2005, stating that the parties have agreed, without prejudice to either parties' position as to duration of Judge Karas's Amended Order dated September 28, 2005, that said order be treated as if in effect pending a further hearing before the Court on October 14, 2005 or as soon thereafter as directed by the Court. Upon ratification of the LOA entitled "Contract Extension Agreement", the Company agrees as soon as reasonably possible to withdraw and dismiss such litigation with prejudice.

3.    ALPA agrees to withdraw and dismiss with prejudice the following grievances:

   a.    MEC Grievance filed September 19, 2005 alleging violation of Section 1.E.1.8

   b.    MEC Grievance filed September 19, 2005 alleging violation of Section 23.

4.    The carrier agrees to withdraw and dismiss without prejudice the May 13, 2005 Company grievances filed by Polar regarding the establishment of a Policy Initiation Date by ALPA.

5.    As to the September 28, 2005 Atlas Company grievance regarding the Atlas No-Strike Letter of Agreement, Atlas agrees to withdraw and dismiss with prejudice but without precedent as to either parties' position as to meaning and application of the Atlas No-Strike Letter of Agreement.

6.    Appropriate dismissal letters relating to the grievances referred to in paragraphs 3, 4 and 5 above, will be prepared and signed by officers of ALPA and officers of Polar and/or Atlas.

**TENTATIVE AGREEMENT**
**October 2, 2005**

K.    <u>Dispute Resolution</u>

Any dispute over interpretation or application of this Back to Work Agreement
shall be processed under Section 1.F. of the Agreement. The neutral arbitrator
shall have the authority to order any remedy, including equitable relief, to
adequately and appropriately address the Association's grievance.

IN WITNESS WHEREOF, the parties hereto have signed this Letter of Agreement on
this ___ day of October, 2005.

FOR POLAR AIR CARGO, INC.          FOR THE AIR LINE PILOTS
                                   ASSOCIATION

_____     _____
James R. Cato                      Duane E. Woerth, President

_____     _____
John W. Dietrich                   Robert T. Henderson Jr.
                                   Polar Air Cargo MEC

_____     _____
Christopher A. Agnini              Michael S. Cushanick
                                   Polar Air Cargo MEC

_____     _____
Scott K. Lindsay                   Robert L. Hester Jr.
                                   Polar Air Cargo MEC

**TENTATIVE AGREEMENT**
**October 2, 2005**

Appendix A

LETTER OF AGREEMENT

between

POLAR AIR CARGO, INC.

and the pilots in its service
as represented by the

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL

Re:  Return to Work Dispute Resolution

THIS LETTER OF AGREEMENT is made and entered into in accordance with the provisions of Title I of the Railway Labor Act, as amended, by and between Polar Air Cargo, Inc. (hereinafter referred to as the "Company") and the Air Line Pilots in the service of the Company as represented by the Air Line Pilots Association, International (hereinafter referred to as the "Association").

WHEREAS, the parties reached agreement on the Contract Extension Agreement and the Return to Work Letter of Agreement both dated October ___, 2005; and

WHEREAS, in the drafting of those documents the parties concluded that a dispute exists regarding the settlement of the issue of the application to crewmembers of the thirty-two and one-half (32.5) hour minimum guarantee for the month of September, 2005; and

WHEREAS, the parties wish to conclude the negotiation of issues related to the suspension of service by Polar Air Cargo pilots, their return to work and provide for the efficient return to operations by the Company;

THE PARTIES HEREBY AGREE THAT:

1.  This dispute will be submitted to binding arbitration to determine the appropriate resolution of this matter in accordance with Paragraph K. of the Return to Work Agreement.

2.  The arbitration will take place on October ___, 2005 in front of Arbitrator Robert Harris, sitting alone, and will take place at the Association's offices in Washington, DC, Herndon, VA or other suitable location.

3.  The Arbitrator will be presented with the issues of whether there was an agreement to pay all active crewmembers a minimum thirty-two and one-half

8

**TENTATIVE AGREEMENT**
**October 2, 2005**

(32.5) hour guarantee for the month of September and; if not, whether and in what way the collective bargaining agreement will apply to the payment of such guarantee for September, 2005. There will be no limitation on the Arbitrator's ability to hear testimony or receive evidence related to the parties' negotiation process, contract and return to work settlements, understandings thereof, or the collective bargaining agreement itself.

4. The Arbitrator will render his decision in writing within thirty (30) days unless an extension is mutually agreed to by the parties.

5. The Arbitrator will not be prohibited from mediating this dispute if, in his discretion, that course would help resolve the dispute.

IN WITNESS WHEREOF, the parties hereto have signed this Letter of Agreement on this ___ day of October, 2005.

FOR POLAR AIR CARGO, INC.

FOR THE AIR LINE PILOTS ASSOCIATION

_____
James R. Cato

_____
Duane E. Woerth, President

_____
John W. Dietrich

_____
Robert T. Henderson Jr.
Polar Air Cargo MEC

_____
Christopher A. Agnini

_____
Michael S. Cushanick
Polar Air Cargo MEC

_____
Scott K. Lindsay

_____
Robert L. Hester Jr.
Polar Air Cargo MEC

9

**TENTATIVE AGREEMENT**
**October 2, 2005**

Appendix B

September 30, 2005

Captain David Bourne
Chairman
Atlas MEC
535 Herndon Parkway
Herndon, Virginia 20172-1169

Re: No Retaliation/Make Whole

Dear Dave:

In the interest of fostering harmony among all of our crewmembers, to help put past disagreements behind us, and to help restore smooth operation of our airline, in light of the settlement of the Polar crewmember strike, Atlas commits not to retaliate or to engage in any recriminations against Atlas crewmembers who refused to cross the Polar strike picket line, or who otherwise engaged in activities designed to support the Polar strike. Atlas commits not to levy any discipline against any Atlas crewmember involved in the aforesaid activities, and further pledges not to take any other retaliatory action against these crewmembers, or to disfavor them in any way in relation to other crewmembers as a result of taking part in said activities. Finally, Atlas agrees to restore the pay withheld from these crewmembers for taking part in such activities, and to otherwise make them whole. Resolution of any disputes arising under this agreement shall be subject to the grievance dispute resolution procedures set forth in Sections 20 and 21 of the Atlas-ALPA collective bargaining agreement.

Sincerely,


James R. Cato
Vice President of Labor Relations and Flight Operations

Agreed: _____
David Bourne
Chairman Atlas MEC

10

# EXHIBIT  F

Atlas Air Worldwide Holdings, Inc.
2000 Westchester Avenue
Purchase, NY 10577-2543
www.atlasair.com



July 10, 2007

Captain David Bourne
Chairman, ALPA Council 72
36448 West Main Street
Purcellville, VA 20132

Captain Bobb Henderson
Chairman, ALPA Council 023
16850-112 Collins Ave. #126
Sunny Isles Beach, Fl 33160

    Re: Atlas Air – Polar Air Cargo Single Contract Negotiations

Gentlemen:

It has now been well over two and one-half years since the Company announced its decision in November of 2004 to merge the crew forces of Atlas Air and Polar Air Cargo. Equally important, it has been twenty months since ALPA set its Policy Initiation Date ("PID") recognizing the merger. While the integration of the seniority lists was completed seven months ago - with both MECs' full knowledge that post merger both certificates would remain active - disappointingly there has been no progress towards completion of the required Single Collective Bargaining Agreement ("SCBA").

The protocols for completing this merger are already set forth in the Polar and Atlas Collective Bargaining Agreements (the "CBAs"). From the outset, however, the Company has been willing to enter into a Merger Protocol Letter of Agreement to further facilitate the process of negotiating the SCBA, despite the fact that there is no requirement for such an alternative protocol.

The Company's last Merger Protocol LOA, presented on May 2, 2007, addresses every issue raised by both MECs related to the manner in which the SCBA negotiations are to be conducted. If implemented, it would be at significant additional cost to the Company than were the parties to simply follow the existing contractual protocols. It includes agreement with your proposal to use the services of a "mediator-arbitrator" from the outset of our negotiations, agreement to Company-paid flight release for two Crewmembers designated by each MEC, and agreement to all your demands for provisions for ensuring the timely conclusion of the process. It is effectively a match to the proposal tendered by the Association dated September 8, 2006, and exactly what the parties started out to accomplish in December of 2004.

Notwithstanding, the Company is now being asked to "pre-negotiate" Scope before you will agree to even begin negotiations for the required SCBA and complete the merger.

As was expressed at our meeting on May 2, 2007, again in the letter from John Dietrich to Captain Prater dated May 16, 2007, and as reiterated by Bill Flynn at our meeting on June 25, 2007, the Company does not believe it to be appropriate to "pre-negotiate" Scope or even limited provisions of Scope as condition precedent to negotiating and concluding a comprehensive SCBA, and certainly doing so is not required under either CBA.

As Mr. Dietrich stated in his above referenced letter to Captain Prater, the Company does not believe it would be appropriate to negotiate any section of the SCBA on an up-front basis, nor is there any precedent for doing so. Both the Company's protocol proposal and the existing CBA protocols for completing the SCBA provide an effective mechanism for the negotiation and resolution of all sections of the SCBA, including Scope.

The Polar and Atlas CBAs, the Polar Return to Work LOA, and the Association's Merger and Fragmentation Policy all obligate the parties to complete the negotiation of the SCBA under the existing contractual protocols set forth in Section 1 of both CBAs. Given the already substantial delays in completing the contractually required negotiations for an SCBA the Company believes it has no reasonable alternative but to proceed to compel compliance with the Association's obligations through the System Board of Adjustment. Therefore, the Company submits the enclosed management grievances.

Please understand that we take this action reluctantly, as it would have been our strong preference to move the merger forward without the need to file these grievances. Indeed, we remain willing to begin negotiations pursuant to the provisions of the Merger Protocol LOA we tendered on May 2, 2007 or pursuant to the protocols of the pre-integration CBAs should you be willing to do so. However, short of your agreement to immediately begin the required SCBA negotiations, we intend to expedite these grievances to the System Board for hearing and final resolution.

Should you have any questions or want to discuss these grievances further, please let me know.

Very truly yours,

James R. Cato
Vice President Flight Operations & Labor Relations

Cc:    J. Prater
       R. Helling
       S. Nagrotsky
       E. Barber

 **POLAR AIR CARGO**

July 10, 2007

Captain John Prater, President
Air Line Pilots Association
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036

Re:    Atlas Air – Polar Air Cargo Merger
       Company Grievance

Dear Captain Prater:

Polar Air Cargo Worldwide, Inc. as successor to Polar Air Cargo, Inc. (the "Company") submits this grievance to compel the Polar MEC and the Association to cease its continuing violation of Section 1.D.1.d the parties' Collective Bargaining Agreement ("CBA") and paragraph F of the parties' "Return to Work Letter of Agreement" dated October 2, 2005 and to immediately begin negotiations with the Company to merge the two pre-integration collective bargaining agreements of Atlas Air, Inc. and Polar Air Cargo Worldwide, Inc. into one agreement. In accordance with paragraph K of the Return to Work Letter of Agreement and Section 1.F. of the CBA, the Company intends to submit this grievance directly before the Polar Air Cargo Crewmembers' System Board of Adjustment on an expedited basis, to be heard as soon thereafter as possible.

The Company's grievance is based on the following facts:

1.    By letter dated November 5, 2004 the Company notified both the Atlas Air MEC and the Polar Air Cargo MEC that the Atlas Air Worldwide Holdings Board of Directors had directed management take the necessary steps to integrate the Crewmember seniority lists of Atlas Air and Polar Air Cargo.

2.    Pursuant to paragraph F of the Return to Work Letter of Agreement between the parties dated October 2, 2005, the Polar MEC obligated itself to complete the merger of the crew forces of Polar Air Cargo and Atlas Air.

3.    On or about October 26, 2005 the Association's Executive Council determined there to be "sufficient operational integration" between Atlas Air and Polar Air Cargo to trigger the establishment of a "Policy Initiation Date" ("PID") pursuant to the Association's Merger and Fragmentation Policy.

4.    On or about March 6, 2006 the Atlas Air and Polar Air Cargo MECs began the process of integrating their respective seniority lists in accordance with both their respective CBAs and the Association's Merger and Fragmentation Policy.

5.   On or about November 21, 2006 Arbitrator Robert O. Harris issued his "Opinion and Award" integrating the Crewmember seniority lists of Atlas Air and Polar Air Cargo. His opinion and award, together with the integrated lists were tendered to the Company on November 22, 2006.

6.   Although not required to do so, the Company expressed its willingness to consider a Merger Protocol Letter of Agreement to facilitate completion of the required negotiations for a Single Collective Bargaining Agreement ("SCBA") to cover the merged crew force. To that end the Company proffered numerous proposals, the most recent of which is dated and was proffered to the Association on May 2, 2007. The Company has received no response to its proposal..

7.   To date the Association has refused to begin the required negotiations for the SCBA.

Section 1.D.1.d of our CBA sets forth the Association's responsibilities regarding negotiations with the Company to merge the two pre-integration collective bargaining agreements into one agreement:

d.   The respective crewmembers' collective bargaining agreements shall be merged into one (1) agreement as the result of negotiations between the post-merger representative of the crewmembers and the successor. If a fully merged agreement is not executed within nine (9) months from the date an integrated seniority list is presented to the successor, the parties shall jointly submit outstanding issues to binding interest arbitration.

Additionally, paragraph F of the Return to Work Letter of Agreement provides as follows:

F.   <u>Merger</u>

Within fourteen (14) days following DOS the Company shall file official notices of intent to reinstate the merger of Atlas Air and Polar Air Cargo with the DOT, FAA and NMB. Upon the Company taking the steps described in the previous sentence, the Polar MEC shall promptly take all steps necessary, including requesting that ALPA expeditiously set a Policy Initiation Date (PID) under its Merger and Fragmentation Policy, so as to begin the process of integrating the Polar and Atlas Crewmember seniority lists. Effective DOS, the provisions of Section 1.D.1.e shall be deemed to be in effect, provided, however, that if ALPA has not set a PID within ninety (90) days from DOS the provisions of Section 1.D.1.e will no longer be applicable until and unless ALPA sets the required PID.

The Association's continued refusal to begin and complete negotiations with the Company to merge the two pre-integration collective bargaining agreements into one agreement is in direct violation of both the CBA and the Return to Work

Letter of Agreement dated October 2, 2005. As relief, the Company demands that the Association immediately begin negotiations with the Company to merge the two pre-integration collective bargaining agreements into a single agreement.

Respectfully submitted on behalf of the Company,

James R. Cato
Vice President, Flight Operations and Labor Relations

Cc:    Captain Bobb Henderson
       Everett Barber, Esq.

# EXHIBIT G



**PRESIDENT'S DEPARTMENT**
## AIR LINE PILOTS ASSOCIATION, INTERNATIONAL
1625 MASSACHUSETTS AVENUE, NW □ WASHINGTON, DC 20036 □ 1-888-FLY-ALPA (1-888-359-2572)
FAX 202-797-4007

August 2, 2007

<u>**VIA ELECTRONIC MAIL & FEDEX DELIVERY**</u>

Mr. James R. Cato, Vice President
Flight Operations and Labor Relations
Polar Air Cargo
2000 Westchester Avenue
Purchase, NY 10577-2543

Re: Atlas Air – Polar Air Cargo Merger Company Grievance

Dear Mr. Cato:

This is in reply to your letter dated July 10, 2007, in which you have submitted a grievance against the Polar MEC and the Association regarding alleged violations of Section 1 of the Polar Collective Bargaining Agreement ("CBA") and the October 2, 2005 Return to Work Agreement.

While we disagree with the characterizations and conclusions contained in your grievance, we respect Polar's right to file a company grievance under Section 20.D of the CBA. However, ALPA does not agree that Polar has any right to expedite its grievance before the Polar Air Cargo System Board of Adjustment either under Section 1.F of the parties' CBA or under Paragraph K of the Return to Work Agreement. Section 1.F of the CBA provides for expedited treatment only for grievances filed by the Association, and Section K of the Return to Work Agreement incorporates these restrictions, and similarly limits expedited treatment to grievances filed by the Association. The processing of company grievances is governed by the procedures specified in Section 20.D of the CBA, which contains no provisions for expedited treatment.

Further, we see no basis to give to this grievance priority over all the other numerous Association grievances which have been long pending before the System Board, which to date have not even been scheduled for hearing. Therefore, the status of this grievance will remain pending until other previously filed contract-dispute cases appealed to the System Board have been scheduled and heard.

Finally, I attach for your information a copy of the November 30, 2006 Resolution of the ALPA Executive Council. Although the Executive Council will continue to monitor developments as appropriate, this Resolution currently remains the Association's operative policy with respect to the Atlas-Polar Merger.

Sincerely,

*John H. Prater*

Captain John H. Prater, President

cc: Polar MEC
    Atlas Air MEC
    Bruce York
    Paul Rice
    Randy Helling

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL
93RD SPECIAL EXECUTIVE COUNCIL MEETING
November 30, 2006

SUBJECT
AAI/PAC Merger Update

AGENDA ITEM NUMBER
AI #1

1
2   FINAL RESOLUTION
3   WHEREAS the Executive Council has previously established a Policy
4   Initiation Date under ALPA Merger Policy and Procedures for Polar Air
5   Cargo, Inc. (PAC) and Atlas Air, Inc. (AAI), and
6
7   WHEREAS the AAI and PAC pilot groups have recently received the
8   Opinion and Award of the Arbitration Board, issued pursuant to ALPA
9   Merger Policy and Procedures, and
10
11  WHEREAS during the ALPA seniority integration proceedings,
12  management announced a proposed transaction with DHL Express
13  which includes significant corporate restructuring, and
14
15  WHEREAS the AAI MEC and PAC MEC have proposed a negotiated
16  resolution of issues of concern to the Association, to be incorporated in
17  agreements satisfactory to the AAI MEC and PAC MEC, as an
18  alternative to enforcement of current contract and legal rights,
19
20  THEREFORE BE IT RESOLVED that the Executive Council supports
21  the following course of action with respect to the proposed Atlas-
22  Polar/DHL transaction:
23
24      1.    Negotiation of agreements satisfactory to the AAI MEC and
25            PAC MEC on terms and conditions relating to the proposed
26            DHL transaction which protect the legitimate interests of both
27            pilot groups.
28
29      2.    The enforcement of current contract provisions and legal
30            rights to protect the legitimate interests of both pilot groups in

31          the event that such satisfactory agreements cannot be
32          concluded, and
33
34
35    BE IT FURTHER RESOLVED that in accordance with ALPA Merger
36    Policy, the presentation of the merged seniority lists to management be
37    held in abeyance pending the conclusion of satisfactory agreements
38    which provide for their presentation to management or further review
39    of the situation by the Executive Council, whichever occurs first, and
40
41    BE IT FURTHER RESOLVED that the Executive Council, at its next
42    regular or special meeting, review the status of developments and
43    consider such action as may be required under the circumstances.
44

# EXHIBIT H

-----Original Message-----
**From:** Siegel, Robert [mailto:RSiegel@OMM.com]
**Sent:** Wednesday, August 08, 2007 7:22 PM
**To:** Barber, Everett, ATL CA
**Cc:** Cato, Jim
**Subject:** Polar Air/ALPA Grievances

Dear Ev:
Based on our discussions over the past several weeks, including our telephone conversation today, it is my understanding that the Association intends to submit the two grievances filed by the Polar MEC pursuant to Section 1.F to the first two arbitrators on the Polar-ALPA System Board of Adjustment list. More specifically, you have advised that PAC 04-07GG (the first filed Section 1.F grievance) will be assigned to Arbitrator Herb Fishgold (the first arbitrator on the list) and PAC 08-07GG (the other Section 1.F grievance filed by the Association) will be assigned to Arbitrator Richard Bloch, the second arbitrator on the list. This is consistent with the Association's view that both grievances are eligible to be expedited (heard before all other Association filed contract grievances), and that the protocol set forth in the parties System Board of Adjustment LOA allows you to assign these two grievances unilaterally, based on the order in which arbitrators are listed on the parties' panel.

Based on Captain Prater's response to Polar's management grievance, which was sent to the Association on July 10, 2007, it is our understanding that the Association does not believe this grievance can be scheduled before the other pending non-Section 1.F contract grievances filed by the Association . As you are aware, Polar believes the Association's position in this regard is without foundation, and indeed contrary to the specific provisions of the Return to Work Agreement LOA executed by the parties in October 2005. I trust, however, that the Association recognizes that this issue is a minor dispute, and thus properly to be resolved by the System Board.

The Company will accept the Association's view of the protocol for assigning arbitrators to grievances. It therefore follows that Polar's management grievance must be assigned to the next arbitrator on the list, Arbitrator Fred Horowitz, who I will be contacting today to advise that he has been assigned this grievance, and to request immediate hearing dates.

To the extent the Association intends to object to the right of Polar to have its management grievance heard on an expedited basis, it will be free to raise that issue before Arbitrator Horowitz. Anticipating that this will be the case, I will ask that he consider scheduling a pre-hearing motion conference.

Please feel free to contact me if you have any questions.

-- Bob Siegel

**Robert A. Siegel**
**O'Melveny & Myers LLP**
400 Hope St.
Los Angeles, Calif. 90071
213-430-6005
rsiegel@omm.com

*This message and any attached documents contain information from the law firmof O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

# EXHIBIT I

| From: | Siegel, Robert |
|---|---|
| Sent: | Wednesday, August 08, 2007 5:37 PM |
| To: | 'Barber, Everett, ATL CA' |
| Cc: | FRHorowitz@aol.com |
| Subject: | Polar Air Cargo/ALPA Management Grievance |

Ev --

Pursuant to my prior email to you, I contacted Fred Horowitz regarding the above matter. I explained that his name came up as next in order on the parties' panel, and on that basis, he would be the arbitrator for this grievance. I also indicated that the Company contends that the parties' agreement requires that this grievance be resolved on an expedited basis, and that ALPA disagrees. I asked for a pre-hearing conference so that Mr. Horowitz can resolve this preliminary "minor dispute" on a prompt basis. Mr. Horowitz suggested a call for this coming Monday August 13 anytime between 10:00 am - 12 noon PDT. That is acceptable to me, and I assume that you will be willing to make yourself available at that time, Please confirm by reply email to me and Mr. Horowitz.

In a separate email, I will send around the conference call-in number for the Monday call.

Best regards --

Bob

**Robert A. Siegel**
**O'Melveny & Myers LLP**
400 Hope St.
Los Angeles, Calif. 90071
213-430-6005
rsiegel@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

# EXHIBIT J

**From:** Siegel, Robert
**Sent:** Thursday, August 09, 2007 6:45 AM
**To:** FRHorowitz@aol.com
**Cc:** 'Barber, Everett, ATL CA'
**Subject:** Polar Air Management Grievance

Fred:

In preparation for our call with Ev Barber on Monday, I am attaching the following agreements and correspondence between Polar Air Cargo and ALPA: 1) System Board LOA; 2) arbitrator panel LOA; 3) post-strike Return to Work LOA; 4) Section 1 (scope) of the CBA; 5) Polar's management grievance; 6) Polar's cover letter transmitting the management grievance; and 7) ALPA's response to the management grievance (in the form of a letter from Captain Prater).

As you will see, ALPA agrees that the Company has the right to file and arbitrate the management grievance, but disagrees with the Company's assertion of a right to expedite a hearing on the grievance. That disagreement is a preliminary "minor dispute" which requires prompt resolution by you.

Pending resolution of that preliminary issue, the Company asks that you schedule two days in the near term for a hearing on the merits of the grievance. That will serve to reserve the days in the event you decide that the case should be expedited. Of course, if you decide against expediting the case, the dates can be changed as warranted. The Company is willing to schedule the merits hearing on weekend days if necessary, and at a location of your choice.

I look forward to talking with you and Ev on Monday. I suggest that we do so starting at 10:30 am PDT. My assistant will circulate a call-in number.

Thanks for your attention to this matter.

-- Bob Siegel

**Robert A. Siegel**
**O'Melveny & Myers LLP**
400 Hope St.
Los Angeles, Calif. 90071
213-430-6005
rsiegel@omm.com
*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

# EXHIBIT K

**From:** Barber, Everett, ATL CA [mailto:Everett.Barber@alpa.org]
**Sent:** Friday, August 10, 2007 10:20 AM
**To:** Siegel, Robert; FRHorowitz@aol.com
**Cc:** James.Wilson@alpa.org; Migliore, Marcus, Legal; Bobb Henderson
**Subject:** RE: Polar Air Management Grievance

Bob,

This is in response to your several e-mails yesterday concerning your attempt to schedule a conference requiring ALPA's participation with Arbitrator Horowitz. For convenience, I have replied to all recipients of your e-mail, but please construe ALPA's reply as directed to you, and copied to Arbitrator Horowitz.

As you know, you notified Arbitrator Horowitz of your intentions to engage in discussions concerning the Company's recently filed grievance without first obtaining ALPA's concurrence in such matter. The proposed date of next Monday, August 13, has been suggested without consultation with ALPA and without regard to our staff's prior commitments. While we do not refuse to participate in limited discussions concerning the issues you would like to raise with one of the CBA's panel arbitrators, we will not be forced by your unannounced actions to rush into a discussion that you have attempted to unilaterally schedule. Therefore, we suggest that any such discussion be arranged in a cooperative fashion, as such matters are customarily handled by the parties. The necessary ALPA staff that will attend to this matter will not be available until the week of August 20. If you would like to discuss and agree upon a mutually acceptable time and date for the week of August 20, we are available for such purpose.

I notice that when providing various documents to Arbitrator Horowitz, specifically ALPA's letter of August 2, 2007, responding to the Company grievance, you did not include the Executive Council Resolution that was noted in the letter as an attachment. We will provide this document to Arbitrator Horowitz via a separate communication.

So that there is no misunderstanding by either the Company or Arbitrator Horowitz, you are being notified that ALPA's agreement to conference with Company representatives and Horowitz concerning the issues that you have raised should not be construed as indicating that ALPA is participating in any Pre-Conference Hearing of the Company's grievance. Also, such participation should not be construed as indicating that ALPA concurs that Polar or Polar Worldwide has the right to have its grievance adjudicated on an expedited basis, that Polar's grievance has merit, that the Company has any right to assign the grievance to a particular panel arbitrator at this time or that Arbitrator Horowitz has jurisdiction to preside over the Company's grievance at this time.

Everett

---

**From:** Siegel, Robert [mailto:RSiegel@OMM.com]
**Sent:** Thursday, August 09, 2007 9:45 AM
**To:** FRHorowitz@aol.com

**Cc:** Barber, Everett, ATL CA
**Subject:** Polar Air Management Grievance

Fred:

In preparation for our call with Ev Barber on Monday, I am attaching the following agreements and correspondence between Polar Air Cargo and ALPA: 1) System Board LOA; 2) arbitrator panel LOA; 3) post-strike Return to Work LOA; 4) Section 1 (scope) of the CBA; 5) Polar's management grievance; 6) Polar's cover letter transmitting the management grievance; and 7) ALPA's response to the management grievance (in the form of a letter from Captain Prater).

As you will see, ALPA agrees that the Company has the right to file and arbitrate the management grievance, but disagrees with the Company's assertion of a right to expedite a hearing on the grievance. That disagreement is a preliminary "minor dispute" which requires prompt resolution by you.

Pending resolution of that preliminary issue, the Company asks that you schedule two days in the near term for a hearing on the merits of the grievance. That will serve to reserve the days in the event you decide that the case should be expedited. Of course, if you decide against expediting the case, the dates can be changed as warranted. The Company is willing to schedule the merits hearing on weekend days if necessary, and at a location of your choice.

I look forward to talking with you and Ev on Monday. I suggest that we do so starting at 10:30 am PDT. My assistant will circulate a call-in number.

Thanks for your attention to this matter.

-- Bob Siegel


**Robert A. Siegel**
**O'Melveny & Myers LLP**
400 Hope St.
Los Angeles, Calif. 90071
213-430-6005
rsiegel@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

# EXHIBIT L

**From:** Siegel, Robert
**Sent:** Friday, August 10, 2007 12:03 PM
**To:** 'Barber, Everett, ATL CA'
**Cc:** FRHorowitz@aol.com; 'migliorem@alpa.org'
**Subject:** Polar Air Management Grievance

Dear Ev --

Thank you for your response to my email messages.

First, your request that the call with Arbitrator Horowitz be re-scheduled for the week of August 20 is acceptable to the Company. By copy of this email, I hereby ask Mr. Horowitz to suggest available dates and times during that week.

Second, your reference to participating in a call "concerning the issues you [i.e, the Company] would like to raise" with Mr. Horowitz is puzzling  As you well know, the Company has no preliminary issues to raise with Mr. Horowitz. We were arranging this call in anticipation of ALPA's desire to make its argument to the arbitrator concerning the preliminary issue mentioned in ALPA's response to the management grievance -- i.e., that the management grievance should not be heard on the merits until all of the outstanding ALPA grievances are resolved.   I am sure you will agree that ALPA cannot unilaterally "decide" the disputed procedural issue raised in ALPA's response to the management grievance. Thus, if ALPA wishes to assert an argument that somehow the Company is precluded from moving its grievance to a hearing on an immediate basis, it must submit it to an Arbitrator for resolution pursuant to the procedures of the Railway Labor Act and the parties' agreement. On the other hand, if you do not intend to make that argument then there is no preliminary issue. If that is indeed the case then the conference call can be utilized solely for determining dates of availibity so that the hearing on the merits of our grievance can be scheduled.

Third, your reference to having a call with Mr. Horowitz as "one of the CBA's panel members," and your assertion that ALPA is not necessarily agreeing that "the Company has the right to assign the grievance to a particular panel member at this time or that Arbitrator Horowitz has jurisdiction to preside over the Company's grievance at this time" will require further explanation from you. As you well know, you informed the Company that ALPA believes that the parties can unilaterally contact and schedule arbitrators in the order their names appear on the CBA's panel. You also informed the Company that ALPA was going to unilaterally contact and schedule the first two arbitrators on the panel list for two "scope" grievances ALPA believes should be expedited. The Company accepts the protocol you have suggested. It follows that for the Company's management grievance to proceed, the next arbitrator on the panel list -- Mr. Horowitz -- must be assigned. That must occur so that we have a neutral arbitrator designated to decide the preliminary issue raised in ALPA's response to the grievance. Of course, if you think a different arbitrator should  be assigned, please so advise us, and the basis for this contention. But certainly you cannot credibly contend that no arbitrator should be assigned.

-- Bob


Robert A. Siegel
O'Melveny & Myers LLP
400 Hope St.
Los Angeles, Calif. 90071
213-430-6005
rsiegel@omm.com
*This message and any attached documents contain information from the law firmof O'Melveny & Myers LLP that may be*

*confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

# EXHIBIT M

----- Original Message -----
From: frhorowitz@aol.com <frhorowitz@aol.com>
To: Siegel, Robert; Everett.Barber@alpa.org <Everett.Barber@alpa.org>
Cc: migliorem@alpa.org <migliorem@alpa.org>
Sent: Fri Aug 10 13:10:03 2007
Subject: Re: Polar Air Management Grievance

Everett, Bob
Currently I am available for a conferece call Aug 20-23 (canceled hearing dates I have
kept open for writing) at your convenience with advance notice.
However, after reviewing your exchange of emails, it appears the parties have yet to agree
that I have been mutually selected to hear whatever matter(s) I will be asked to decide.
Absent such agreement, sound arbitral practice in those rare instances is to decline the
exercise of jurisdiction until a court orders otherwise.
Fred


Fredric R. Horowitz
Arbitrator
PO Box 3613
Santa Monica, CA 90408-3613
(310) 829-6064 voice
(310) 449-1049 fax
FRHorowitz@aol.com


-----Original Message-----
From: Siegel, Robert <RSiegel@OMM.com>
To: Barber, Everett, ATL CA <Everett.Barber@alpa.org>
Cc: FRHorowitz@aol.com; migliorem@alpa.org
Sent: Fri, 10 Aug 2007 12:03 pm
Subject: Polar Air Management Grievance


Dear Ev --
Thank you for your response to my email messages.
First, your request that the call with Arbitrator Horowitz be re-scheduled for the week of
August 20 is acceptable to the Company.  By copy of this email,  I hereby ask Mr. Horowitz
to suggest available dates and times during that week.
Second, your reference to participating in a call  "concerning the issues you [i.e, the
Company] would like to raise" with Mr. Horowitz is puzzling   As you well know, the
Company has no preliminary issues to raise with Mr. Horowitz.  We were arranging this call
in anticipation of ALPA's desire to make its argument to the arbitrator concerning the
preliminary issue mentioned in ALPA's response to the management grievance -- i.e., that
the management grievance should not be heard on the merits until all of the outstanding
ALPA grievances are resolved.    I am sure you will agree that ALPA cannot unilaterally
"decide" the disputed procedural issue raised in ALPA's response to the management
grievance. Thus, if ALPA wishes to assert an argument that somehow the Company is
precluded from moving its grievance to a hearing on an immediate basis, it must submit it
to an Arbitrator for resolution pursuant to the procedures of the Railway Labor Act and
the parties' agreement. On the other hand, if you do not intend to make that argument then
there is no preliminary issue.  If that is indeed the case then the conference call can be
utilized solely for determining dates of availibity so that the hearing on the merits of
our grievance can be scheduled.
Third, your reference to having a call with Mr. Horowitz as "one of the CBA's panel
members," and your assertion that ALPA is not necessarily agreeing that "the Company has
the right to assign the grievance to a particular panel member at this time or that
Arbitrator Horowitz has jurisdiction to preside over the Company's grievance at this
time" will require further explanation from you.  As you well know, you informed the

1

Company that ALPA believes that the parties can unilaterally contact and schedule
arbitrators in the order their names appear on the CBA's panel. You also informed the
Company that ALPA was going to unilaterally contact and schedule the first two arbitrators
on the panel list for two "scope" grievances ALPA believes should be expedited. The
Company accepts the protocol you have suggested. It follows that for the Company's
management grievance to proceed, the next arbitrator on the panel list -- Mr. Horowitz --
must be assigned. That must occur so that we have a neutral arbitrator designated to
decide the preliminary issue raised in ALPA's response to the grievance. Of course, if
you think a different arbitrator should be assigned, please so advise us, and the basis
for this contention. But certainly you cannot credibly contend that no arbitrator should
be assigned.
-- Bob

Robert A. Siegel
O'Melveny & Myers LLP
400 Hope St.
Los Angeles, Calif. 90071
213-430-6005
rsiegel@omm.com
This message and any attached documents contain information from the law firmof O'Melveny
& Myers LLP that may be confidential and/or privileged. If you are not the intended
recipient, you may not read, copy, distribute, or use this information. If you have
received this transmission in error, please notify the sender immediately by reply e-mail
and then delete this message.

_____

AOL now offers free email to everyone. Find out more about what's free from AOL at AOL.com
<http://www.aol.com?ncid=AOLAOF00020000000437> .

# EXHIBIT N

**From:** Siegel, Robert
**Sent:** Friday, August 10, 2007 2:40 PM
**To:** 'frhorowitz@aol.com'; Everett.Barber@alpa.org
**Cc:** migliorem@alpa.org
**Subject:** RE: Polar Air Management Grievance

Fred and Ev --

We now have confirmation that Arbitrator Horowitz is available for a call on this case during the week of August 20, as is ALPA and Polar Air Cargo. I hereby ask Ev Barber to confirm, by the close of business on Monday, whether ALPA is willing to pick a date during the week of August 20 for argument and submission to Arbitrator Horowitz on the preliminary issue raised in ALPA's response to the management grievance. If I do not hear from Ev by the close of business on Monday, the Company will be forced to conclude that ALPA is refusing to submit that preliminary issue to arbitration, and the Company will proceed accordingly.

By the way, to make the point crystal clear, the Company contends that Arbitrator Horowitz does have jurisdiction over the management grievance, by virtue of the automatic selection protocol in the parties' agreement. ALPA has not directly contested this point about Arbitrator Horowitz and the selection protocol, and specifically has not indicated that an arbitrator other than Mr.. Horowitz has jurisdiction. Instead, ALPA appears to be arguing that *no* arbitrator has jurisdiction to decide the preliminary minor dispute in this case, and that ALPA somehow gets to decide that dispute unilaterally. If that is indeed ALPA's position, it is plainly untenable, and frivolous.

-- Bob Siegel

**From:** frhorowitz@aol.com [mailto:frhorowitz@aol.com]
**Sent:** Friday, August 10, 2007 1:10 PM
**To:** Siegel, Robert; Everett.Barber@alpa.org
**Cc:** migliorem@alpa.org
**Subject:** Re: Polar Air Management Grievance

Everett, Bob
Currently I am available for a conferece call Aug 20-23 (canceled hearing dates I have kept open for writing) at your convenience with advance notice.
However, after reviewing your exchange of emails, it appears the parties have yet to agree that I have been mutually selected to hear whatever matter(s) I will be asked to decide. Absent such agreement, sound arbitral practice in those rare instances is to decline the exercise of jurisdiction until a court orders otherwise.
Fred

Fredric R. Horowitz
Arbitrator
PO Box 3613
Santa Monica, CA 90408-3613
(310) 829-6064 voice
(310) 449-1049 fax
FRHorowitz@aol.com

-----Original Message-----
From: Siegel, Robert <RSiegel@OMM.com>
To: Barber, Everett, ATL CA <Everett.Barber@alpa.org>
Cc: FRHorowitz@aol.com; migliorem@alpa.org
Sent: Fri, 10 Aug 2007 12:03 pm
Subject: Polar Air Management Grievance

Dear Ev --

Thank you for your response to my email messages.

First, your request that the call with Arbitrator Horowitz be re-scheduled for the week of August 20 is acceptable to the Company. By copy of this email, I hereby ask Mr. Horowitz to suggest available dates and times during that week.

Second, your reference to participating in a call "concerning the issues you [i.e, the Company] would like to raise" with Mr. Horowitz is puzzling. As you well know, the Company has no preliminary issues to raise with Mr. Horowitz. We were arranging this call in anticipation of ALPA's desire to make its argument to the arbitrator concerning the preliminary issue mentioned in ALPA's response to the management grievance -- i.e., that the management grievance should not be heard on the merits until all of the outstanding ALPA grievances are resolved. I am sure you will agree that ALPA cannot unilaterally "decide" the disputed procedural issue raised in ALPA's response to the management grievance. Thus, if ALPA wishes to assert an argument that somehow the Company is precluded from moving its grievance to a hearing on an immediate basis, it must submit it to an Arbitrator for resolution pursuant to the procedures of the Railway Labor Act and the parties' agreement. On the other hand, if you do not intend to make that argument then there is no preliminary issue. If that is indeed the case then the conference call can be utilized solely for determining dates of availibity so that the hearing on the merits of our grievance can be scheduled.

Third, your reference to having a call with Mr. Horowitz as "one of the CBA's panel members," and your assertion that ALPA is not necessarily agreeing that "the Company has the right to assign the grievance to a particular panel member at this time or that Arbitrator Horowitz has jurisdiction to preside over the Company's grievance at this time" will require further explanation from you. As you well know, you informed the Company that ALPA believes that the parties can unilaterally contact and schedule arbitrators in the order their names appear on the CBA's panel. You also informed the Company that ALPA was going to unilaterally contact and schedule the first two arbitrators on the panel list for two "scope" grievances ALPA believes should be expedited. The Company accepts the protocol you have suggested. It follows that for the Company's management grievance to proceed, the next arbitrator on the panel list -- Mr. Horowitz -- must be assigned. That must occur so that we have a neutral arbitrator designated to decide the preliminary issue raised in ALPA's response to the grievance. Of course, if you think a different arbitrator should be assigned, please so advise us, and the basis for this contention. But certainly you cannot credibly contend that no arbitrator should be assigned.

-- Bob

**Robert A. Siegel**
**O'Melveny & Myers LLP**
400 Hope St.
Los Angeles, Calif. 90071
213-430-6005
rsiegel@omm.com

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

---

AOL now offers free email to everyone. Find out more about what's free from AOL at **AOL.com**.

# EXHIBIT O

**From:** Siegel, Robert
**Sent:** Monday, August 13, 2007 5:28 PM
**To:** 'Barber, Everett, ATL CA'
**Cc:** FRHorowitz@aol.com
**Subject:** RE: Conference Call with Arbitrator Horowitz

Fred:

In Ev Barber's prior message of August 10, he stated that participating in a phone conference with you regarding the management grievance "should not be construed as indicating that ALPA concurs that ...the Company has any right to assign the grievance to a particular panel arbitrator at this time or that Arbitrator Horowitz has jurisdiction to preside over the Company's grievance at this time." In response, in your email of August 10, you wrote: "...it appears the parties have yet to agree that I have been mutually selected to hear" this grievance, and that "absent such agreement, sound arbitral practice ...is to decline the exercise of jurisdiction until a court orders otherwise." I, in turn, asked Ev Barber to confirm that ALPA is willing to submit this grievance (including the preliminary issue regarding the timing of the hearing on the grievance) to your jurisdiction. By his below email, Ev Barber has expressly declined to do so. Instead, he has stated that ALPA's "position remains as stated in my e-mail to you on August 10" -- which is the email quoted above.

From your prior message, I understood that, in light of ALPA's failure to concur in your designation as arbitrator, you would not preside over this grievance, including the planned call for the week of August 20, absent a court order. In light of this most recent message from Ev Barber, may I ask if your position remains as stated in your prior email?

Thank you in advance for attention to this matter.

-- Bob Siegel

**From:** Barber, Everett, ATL CA [mailto:Everett.Barber@alpa.org]
**Sent:** Monday, August 13, 2007 3:40 PM
**To:** Siegel, Robert
**Cc:** FRHorowitz@aol.com
**Subject:** Conference Call with Arbitrator Horowitz

Bob,

I have already informed you that ALPA is willing to conference with Polar's representatives. ALPA staff members are available August 23rd. You are reminded that our position remains as stated in my e-mail to you on August 10th.

Everett

# EXHIBIT P

**From:** frhorowitz@aol.com [mailto:frhorowitz@aol.com]
**Sent:** Wednesday, August 15, 2007 4:51 PM
**To:** Siegel, Robert; Everett.Barber@alpa.org
**Subject:** Re: Conference Call with Arbitrator Horowitz

Bob, Everett
Absent mutual agreement by the parties than an arbitrator has jurisdiction over a given grievance, or
given issue, an arbitrator does not have authority to act.
I remain available for a conference call if both sides wish to discuss this or anything else.
Fred

Fredric R. Horowitz
Arbitrator
PO Box 3613
Santa Monica, CA 90408-3613
(310) 829-6064 voice
(310) 449-1049 fax
FRHorowitz@aol.com


-----Original Message-----
From: Siegel, Robert <RSiegel@OMM.com>
To: Barber, Everett, ATL CA <Everett.Barber@alpa.org>
Cc: FRHorowitz@aol.com
Sent: Mon, 13 Aug 2007 5:27 pm
Subject: RE: Conference Call with Arbitrator Horowitz

Fred:

In Ev Barber's prior message of August 10, he stated that participating in a phone conference with you regarding
the management grievance "should not be construed as indicating that ALPA concurs that ...the Company has
any right to assign the grievance to a particular panel arbitrator at this time or that Arbitrator Horowitz has
jurisdiction to preside over the Company's grievance at this time." In response, in your email of August 15, you
wrote: "...it appears the parties have yet to agree that I have been mutually selected to hear" this grievance, and
that "absent such agreement, sound arbitral practice ...is to decline the exercise of jurisdiction until a court orders
otherwise." I, in turn, asked Ev Barber to confirm that ALPA is willing to submit this grievance (including the
preliminary issue regarding the timing of the hearing on the grievance) to your jurisdiction. By his below email, Ev
Barber has expressly declined to do so. Instead, he has stated that ALPA's "position remains as stated in my e-
mail to you on August 10" -- which is the email quoted above.

From your prior message, I understood that, in light of ALPA's failure to concur in your designation as arbitrator,
you would not preside over this grievance, including the planned call for the week of August 20, absent a court
order. In light of this most recent message from Ev Barber, may I ask if your position remains as stated in your
prior email?

Thank you in advance for attention to this matter.

-- Bob Siegel

**From:** Barber, Everett, ATL CA [mailto:Everett.Barber@alpa.org]
**Sent:** Monday, August 13, 2007 3:40 PM
**To:** Siegel, Robert
**Cc:** FRHorowitz@aol.com
**Subject:** Conference Call with Arbitrator Horowitz

Bob,

    I have already informed you that ALPA is willing to conference with Polar's representatives. ALPA staff members are available August 23rd. You are reminded that our position remains as stated in my e-mail to you on August 10th.

    Everett

AOL now offers free email to everyone. Find out more about what's free from AOL at **AOL.com**.